MARY E. MESSER *vs*. THE FADETTES & others.

Suffolk.    December 10, 1896. — March 5, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Trademark — Assignability of Trade Name — Equity.*

A. organized an orchestra, giving it a certain name, and hired and paid the members of it. He afterwards sold to B. all his right, title, and interest in and to the organization, " together with all rights acquired in and to the establishment, name, and trademark in the words " composing the name, and then ceased to have any connection with it. The other members of the orchestra were not parties to the contract, and did not agree to continue to play under the management of B., but subsequently withdrew from the organization, and with others formed a corporation under the name invented by A. *Held*, that B. could not maintain a bill in equity to restrain the use of such name. LATHROP, J., dissenting.

BILL IN EQUITY, filed in the Superior Court, to restrain the use of an alleged trade name. Hearing before *Braley*, J., who found the following facts.

On October 1, 1888, Ethel Atwood organized an orchestra composed exclusively of women musicians, and selected as a name for such organization " Fadette Ladies' Orchestra," and afterwards advertised the services of such orchestra throughout New England. Such organization became well known to the ·

musical profession, and to the public generally, in a favorable manner, under the name "Fadette Ladies' Orchestra," by reason of the character and quality of the musical entertainments given by it; and its success was due to the ability, skill, and personal supervision of said Atwood. It did not appear that prior to the transaction between the plaintiff and Atwood, hereinafter referred to, any organization distinguished by the name of "Fadette" existed, except the one organized by Atwood. On October 18, 1895, Atwood, for a valuable consideration, sold and conveyed to the plaintiff "all my right, title, and interest in and to the organization known as the 'Fadette Ladies' Orchestra,' . . . together with all rights acquired in and to the establishment, name, and trademark in the words of 'Fadette Ladies' Orchestra,'" and ceased any further connection with it. Afterwards the plaintiff gave at least one or more entertainments under the name of the "Fadette Ladies' Orchestra." At the time of the sale, and for a short time thereafter, the orchestra was composed substantially of the same membership as before the sale. Subsequently, Caroline B. Nichols, Jenny P. Daniel, and Viola M. Dunn, and others composing the orchestra, left it and organized an association under the name of "The Fadettes," which association duly became a corporation, under Pub. Sts. c. 115, and thereafter gave musical concerts, and used in advertising such concerts, as well as holding itself out for engagements, the name "Fadette Ladies' Orchestra."

On January 14, 1896, the plaintiff filed this bill to enjoin the defendant organization from using the name "Fadette." At the time the bill was filed no member of the original organization, except the plaintiff, remained.

The organization formed by Atwood had no place of business; engagements were made through Atwood, who had a room in Boston, and the different members were notified by her when they were wanted.

All of the members of the original organization were hired by Atwood, and were paid from time to time by her for their services.

The members of the orchestra, while knowing of the proposed trade between the plaintiff and Atwood, did not assent or agree to continue under the direction or management of the plaintiff.

The judge dismissed the bill; and the plaintiff appealed to this court.

*R. W. Light & C. F. Light*, for the plaintiff.

*T. J. Barry*, for the defendants.

KNOWLTON, J.  Ethel Atwood organized and employed a band of musicians called the " Fadette Ladies' Orchestra," and hired and paid the members of it.  She sold to the plaintiff all her " right, title, and interest in and to the organization known as the ' Fadette Ladies' Orchestra,' . . . together with all rights acquired in and to the establishment, name, and trademark in the words of ' Fadette Ladies' Orchestra,' " and then ceased to have any connection with the company.  The other members of the orchestra were not parties to the contract, and did not agree to continue to play under the direction or management of the plaintiff.  At the time when the plaintiff brought this suit no member of the original organization remained with her.  The question is whether the plaintiff acquired a right in the trademark or trade name which she can enforce by way of injunction against the defendant corporation, some of the members of which were members of the original organization.

It is very clear that this question must be answered in the negative.  So far as Ethel Atwood had any right or ownership in the trade name which designated the organization under her management, it was personal to herself, depending upon her personal reputation and skill, and it was not assignable.  The other musicians employed by her could not by her contract of sale be put in the control of any other person, and there was nothing in her relation to them that she could convey.  The case is not like those in which there is a sale of fixed property, and a local business to which the name belongs, and whose principal features remain unchanged after the sale.  If the use by the plaintiff of the name " Fadette Ladies' Orchestra " would have any influence beneficial to herself upon the public who wished to procure the services of such an organization, it would be only to mislead and defraud them by implying that she and such musicians as she employed were the same persons who had formerly gained a good reputation under this name.  It is well settled that the courts will not enforce a claim of this kind which contains a misrepresentation to the public.  *Hoxie* v. *Chaney,* 143

Mass. 592. *Connell* v. *Reed,* 128 Mass. 477. *Chadwick* v. *Covell,* 151 Mass. 190, 194. *Weener* v. *Brayton,* 152 Mass. 101. *Covell* v. *Chadwick,* 153 Mass. 263, 267. *Manhattan Medicine Co.* v. *Wood,* 108 U. S. 218.                          *Decree affirmed.*

LATHROP, J. I am unable to agree to the opinion of the majority of the court. It proceeds upon the ground that the name adopted by Ethel Atwood for the orchestra organized by her was not assignable, for the reason that it was personal to herself, and depended upon her personal reputation and skill. The court below has found that the success of the orchestra " was due to the ability, skill, and personal supervision of said Atwood." It follows, then, if the decision of the majority of the court is correct, that if a business is conducted under a trade name, the more the ability, skill, and personal supervision of the owner of the business conduces to its success, the less is the trade name assignable with the business. I think that this is not in accordance with sound principles, or with the authorities.

The opinion of the majority appears to be founded upon a view of the law which is sound within certain limitations, namely, that, where the trademark is the name of the proprietor of the business, it cannot be sold apart from the business, on the ground that it means to the public that the personal skill of a particular individual is exercised in the manufacture or selection of the goods upon which it is used. So far as the cases cited in the opinion of the majority seem to me to have any pertinency they are of this class. But this doctrine has no application where the name is sold with the business. *Kidd* v. *Johnson,* 100 U. S. 617. *Sohier* v. *Johnson,* 111 Mass. 238. *Warren* v. *Warren Thread Co.* 134 Mass. 247. *Russia Cement Co.* v. *LePage,* 147 Mass. 206. *H. A. Williams Manuf. Co.* v. *Noera,* 158 Mass. 110. *Dant* v. *Head,* 90 Ky. 255. *Morgan* v. *Rogers,* 26 Pat. Off. Gaz. 1113. *Oakes* v. *Tonsmierre,* 49 Fed. Rep. 447. *Carmichel* v. *Latimer,* 11 R. I. 395. *Hall* v. *Barrows,* 4 DeG., J. & S. 150. *Bury* v. *Bedford,* 4 DeG., J. & S. 352.

In *Booth* v. *Jarrett,* 52 How. Pr. 169, Edwin Booth mortgaged and leased the theatre built by him in New York, and which, when it was built, he called Booth's Theatre. He afterwards sought to restrain the lessee from the use of the name, on the

ground that the public would be misled into believing that he was still the manager and acted there. But the injunction was refused; and it was held that the name passed by the lease.

So the name of a hotel is assignable. *Wood* v. *Sands,* Cox's Manual, No. 467. Names of hotels have also been frequently protected. See cases cited in Cox's Manual, No. 108, and note. So names of newspapers. Cox's Manual, No. 10, and note, and No. 174.

In the case at bar I see no reason why the plaintiff was not entitled to have the trade name of the orchestra protected. Such a name is clearly, to my mind, assignable. It also seems to me that the defendants, being merely employees of the plaintiff, and of her predecessor in title, could not, by leaving, acquire the right to use the name under which they had before performed, or any name so similar as to deceive the public.

It is not a case concerning the right of the majority of an association to the name, for here the name was invented by Atwood, and the defendants were hired by her.

The Boston Symphony Orchestra owes its fame to the efforts of its various leaders. If this name is a trade name, it is assignable. Could it be held that members of the orchestra who chose to leave could associate themselves together and perform under this name without being liable to be restrained by injunction?